# SOCHOR v. FLORIDA

No. 91–5843.   Argued March 2, 1992—Decided June 8, 1992

Souter, J., delivered the opinion of the Court, Part I of which was unanimous, Part II of which was joined by Rehnquist, C. J., and White, O'Connor, Scalia, Kennedy, and Thomas, JJ., Part III–A of which was joined by Rehnquist, C. J., and White, O'Connor, Kennedy, and Thomas, JJ., Part III–B–1 of which was joined by Rehnquist, C. J., and White, Blackmun, Stevens, O'Connor, Kennedy, and Thomas, JJ., and Parts III–B–2 and IV of which were joined by Blackmun, Stevens, O'Connor, and Kennedy, JJ. O'Connor, J., filed a concurring opinion, *post*, p. 541. Rehnquist, C. J., filed an opinion concurring in part and dissenting in part, in which White and Thomas, JJ., joined, *post*, p. 541.

STEVENS, J., filed an opinion concurring in part and dissenting in part, in which BLACKMUN, J., joined, *post*, p. 545. SCALIA, J., filed an opinion concurring in part and dissenting in part, *post*, p. 553.

*Gary Caldwell* argued the cause for petitioner. With him on the briefs were *Richard L. Jorandby* and *Eric Cumfer.*

*Carolyn M. Snurkowski,* Assistant Attorney General of Florida, argued the cause for respondent. With her on the brief were *Robert A. Butterworth,* Attorney General, and *Celia A. Terenzio,* Assistant Attorney General.*

JUSTICE SOUTER delivered the opinion of the Court.

Under Florida law, after a defendant is found guilty of capital murder, a separate jury proceeding is held as the first of two steps in deciding whether his sentence should be life imprisonment or death. Fla. Stat. § 921.141(1) (1991). At the close of such aggravating and mitigating evidence as the prosecution and the defense may introduce, the trial judge charges the jurors to weigh whatever aggravating and mitigating circumstances or factors they may find, and to reach an advisory verdict by majority vote. § 921.141(2). The jury does not report specific findings of aggravating and mitigating circumstances, but if, at the second sentencing step, the judge decides upon death, he must issue a written statement of the circumstances he finds. § 921.141(3). A death sentence is then subject to automatic review by the Supreme Court of Florida. § 921.141(4).

A Florida trial court sentenced petitioner to death after a jury so recommended, and the Supreme Court of Florida affirmed. We must determine whether, as petitioner claims, the sentencer in his case weighed either of two aggravating factors that he claims were invalid, and if so, whether the State Supreme Court cured the error by holding it harmless.

---

*Steven M. Goldstein* filed a brief for the Volunteer Lawyers Resource Center of Florida, Inc., as *amicus curiae* urging reversal.

*Michael Mello* filed a brief for the Capital Collateral Representative of the State of Florida as *amicus curiae.*

We answer yes to the first question and no to the second, and therefore vacate the judgment of the Supreme Court of Florida and remand.

## I

On New Year's Eve 1981, petitioner Dennis Sochor met a woman in a bar in Broward County, Florida. Sochor tried to rape her after they had left together, and her resistance angered him to the point of choking her to death. He was indicted for first-degree murder and kidnaping and, after a jury trial, was found guilty of each offense.

At the penalty hearing, aggravating and mitigating evidence was offered, and the jury was instructed on the possibility of finding four aggravating circumstances, two of which were that

> "the crime for which the defendant is to be sentenced was especially wicked, evil, atrocious or cruel, and [that] the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner, without any pretense of moral or legal justification." App. 326–327.

The judge then explained to the jury that it could find certain statutory and any nonstatutory mitigating circumstances, which were to be weighed against any aggravating ones. By a vote of 10 to 2, the jury recommended the death penalty for the murder. The trial court adopted the jury's recommendation, finding all four aggravating circumstances as defined in the jury instructions and no circumstances in mitigation.

The Supreme Court of Florida affirmed. 580 So. 2d 595 (1991). It declined to reverse for unconstitutional vagueness in the trial judge's instruction that the jury could find as an aggravating factor that "the crime for which the defendant is to be sentenced was especially wicked, evil, atrocious or cruel" (hereinafter, for brevity, the heinousness factor, after the statute's words "heinous, atrocious, or

cruel," Fla. Stat. § 921.141(5)(h) (1991)). The court held the issue waived for failure to object and the claim lacking merit in any event. 580 So. 2d, at 602–603, and n. 10. The court also rejected Sochor's claim of insufficient evidence to support the trial judge's finding of the heinousness factor, citing evidence of the victim's extreme anxiety and fear before she died. The State Supreme Court did agree with Sochor, however, that the evidence failed to support the trial judge's finding that "the crime . . . was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification" (hereinafter the coldness factor), holding this factor to require a "heightened" degree of premeditation not shown in this case. *Id.*, at 603. The State Supreme Court affirmed the death sentence notwithstanding the error, saying that:

> "[1] We . . . disagree with Sochor's claim that his death sentence is disproportionate. [2] The trial court carefully weighed the aggravating factors against the lack of any mitigating factors and concluded that death was warranted. [3] Even after removing the aggravating factor of cold, calculated, and premeditated there still remain three aggravating factors to be weighed against no mitigating circumstances. [4] Striking one aggravating factor when there are no mitigating circumstances does not necessarily require resentencing. *Robinson v. State*, 574 So. 2d 108 (Fla. 1991); *Holton v. State*, 573 So. 2d 284 (Fla. 1990); *James v. State*, 453 So. 2d 786 (Fla.), *cert. denied*, 469 U. S. 1098 . . . (1984); *Francois v. State*, 407 So. 2d 885 (Fla. 1981), *cert. denied*, 458 U. S. 1122 . . . (1982). [5] Under the circumstances of this case, and in comparison with other death cases, we find Sochor's sentence of death proportionate to his crime. *E. g.*, *Hitchcock v. State*, 578 So. 2d 685 (Fla. 1990); *Tompkins*[ v. *State*, 502 So. 2d 415 (Fla. 1986), cert. denied, 483 U. S. 1033 (1987)]; *Doyle*[ v. *State*, 460 So. 2d 353 (Fla. 1984)]." *Id.*, at 604.

Sochor petitioned for a writ of certiorari, raising four questions. We granted review limited to the following two: (1) "Did the application of Florida's [heinousness factor] violate the Eighth and Fourteenth Amendments?" and (2) "Did the Florida Supreme Court's review of petitioner's death sentence violate the Eighth and Fourteenth Amendments where that court upheld the sentence even though the trial court had instructed the jury on, and had applied, an improper aggravating circumstance, [in that] the Florida Supreme Court did not reweigh the evidence or conduct a harmless error analysis as to the effect of improper use of the circumstance on the jury's penalty verdict?" Pet. for Cert. ii; see 502 U. S. 967 (1991).

## II

In a weighing State like Florida, there is Eighth Amendment error when the sentencer weighs an "invalid" aggravating circumstance in reaching the ultimate decision to impose a death sentence. See *Clemons* v. *Mississippi,* 494 U. S. 738, 752 (1990). Employing an invalid aggravating factor in the weighing process "creates the possibility . . . of randomness," *Stringer* v. *Black,* 503 U. S. 222, 236 (1992), by placing a "thumb [on] death's side of the scale," *id.,* at 232, thus "creat[ing] the risk [of] treat[ing] the defendant as more deserving of the death penalty," *id.,* at 235. Even when other valid aggravating factors exist, merely affirming a sentence reached by weighing an invalid aggravating factor deprives a defendant of "the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." *Clemons, supra,* at 752 (citing *Lockett* v. *Ohio,* 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982)); see *Parker* v. *Dugger,* 498 U. S. 308, 321 (1991). While federal law does not require the state appellate court to remand for resentencing, it must, short of remand, either itself reweigh without the invalid aggravating factor or determine that weighing the invalid factor was harmless error. *Id.,* at 320.

## A

Florida's capital sentencing statute allows application of the heinousness factor if "[t]he capital felony was especially heinous, atrocious, or cruel." Fla. Stat. § 921.141(5)(h) (1991). Sochor first argues that the jury instruction on the heinousness factor was invalid in that the statutory definition is unconstitutionally vague, see *Maynard* v. *Cartwright*, 486 U. S. 356 (1988); *Godfrey* v. *Georgia*, 446 U. S. 420 (1980), and the instruction failed to narrow the meaning enough to cure the defect. This error goes to the ultimate sentence, Sochor claims, because a Florida jury is "the sentencer" for *Clemons* purposes, or at the least one of "the sentencer's" constituent elements. This is so because the trial judge does not render wholly independent judgment, but must accord deference to the jury's recommendation. See *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1975) (life verdict); *Grossman* v. *State*, 525 So. 2d 833, 839, n. 1 (Fla. 1988) (death verdict), cert. denied, 489 U. S. 1071 (1989). Hence, the argument runs, error at the jury stage taints a death sentence, even if the trial judge's decision is otherwise error free. Cf. *Baldwin* v. *Alabama*, 472 U. S. 372, 382 (1985). While Sochor concedes that the general advisory jury verdict does not reveal whether the jury did find and weigh the heinousness factor, he seems to argue that the possibility that the jury weighed an invalid factor is enough to require cure.

This argument faces a hurdle, however, in the rule that this Court lacks jurisdiction to review a state court's resolution of an issue of federal law if the state court's decision rests on an adequate and independent state ground, see *Herb* v. *Pitcairn*, 324 U. S. 117, 125–126 (1945), as it will if the state court's opinion "indicates clearly and expressly" that the state ground is an alternative holding, see *Michigan* v. *Long*, 463 U. S. 1032, 1041 (1983); see also *Harris* v. *Reed*, 489 U. S. 255, 264, n. 10 (1989); *Fox Film Corp.* v. *Muller*, 296 U. S. 207, 210 (1935).

The Supreme Court of Florida said this about petitioner's claim that the trial judge's instruction on the heinousness factor was unconstitutional:

> "Sochor's next claim, regarding alleged errors in the penalty jury instructions, likewise must fail. None of the complained-of jury instructions were objected to at trial, and, thus, they are not preserved for appeal. *Vaught v. State*, 410 So. 2d 147 (Fla. 1982). In any event, Sochor's claims here have no merit.[10]
>
> "[10]. . . . . We reject without discussion Sochor's . . . claims . . . that the instructions as to the aggravating factors of heinous, atrocious, or cruel and cold, calculated, and premeditated were improper . . . ."

580 So. 2d, at 602–603, and n. 10.

The quoted passage indicates with requisite clarity that the rejection of Sochor's claim was based on the alternative state ground that the claim was "not preserved for appeal," and Sochor has said nothing in this Court to persuade us that this state ground is either not adequate or not independent. Hence, we hold ourselves to be without authority to address Sochor's claim based on the jury instruction about the heinousness factor.*

---

*JUSTICE STEVENS's dissenting conclusion that we do have jurisdiction, *post*, at 547–549, is mistaken. First, the suggestion that Sochor's pretrial motion objecting to the vagueness of Florida's heinousness factor preserved his objection to the heinousness instruction to the jury, *post*, at 547, ignores the settled rule of Florida procedure that, in order to preserve an objection, a party must object after the trial judge has instructed the jury. See, *e. g.*, *Harris v. State*, 438 So. 2d 787, 795 (Fla. 1983), cert. denied, 466 U. S. 963 (1984); *Vazquez v. State*, 518 So. 2d 1348, 1350 (Fla. App. 1987); *Walker v. State*, 473 So. 2d 694, 697–698 (Fla. App. 1985). While the rule is subject to a limited exception for an advance request for a specific jury instruction that is explicitly denied, see, *e. g.*, *State v. Heathcoat*, 442 So. 2d 955, 957 (Fla. 1983); *Buford v. Wainwright*, 428 So. 2d

B

Sochor maintains that the same Eighth Amendment violation occurred again when the trial judge, who both parties

1389, 1390 (Fla.), cert. denied, 464 U. S. 956 (1983); *De Parias* v. *State,* 562 So. 2d 434, 435 (Fla. App. 1990), Sochor gets no benefit from this exception, because he never asked for a specific instruction.

Second, JUSTICE STEVENS states that "the Florida Supreme Court, far from providing us with a plain statement that petitioner's claim was procedurally barred, has merely said that the claim was not preserved for appeal, and has given even further indication that petitioner's claim was not procedurally barred by proceeding to the merits, albeit in the alternative." *Post,* at 547–548 (citations and internal quotation marks omitted). It is difficult to comprehend why the State Supreme Court's statement that "the claim was not preserved for appeal" would not amount to "a plain statement that petitioner's claim was procedurally barred," especially since there is no reason to believe that error of the kind Sochor alleged cannot be waived under Florida law, see this note, *infra.* It is even more difficult to comprehend why the fact that the State Supreme Court rested upon this state ground merely in the alternative would somehow save our jurisdiction. See *supra,* at 533.

Third, JUSTICE STEVENS suggests that, in holding Sochor's claim waived, the Supreme Court of Florida implied that the claim did not implicate "fundamental error," and that this in turn implied a rejection of Sochor's claim of "error," presumably because all federal constitutional error (or at least the kind claimed by Sochor) would automatically be "fundamental." *Post,* at 548–549. To say that this is "the most reasonable explanation," *Michigan* v. *Long,* 463 U. S. 1032, 1041 (1983), of the court's summary statement that Sochor's claim was "not preserved for appeal," see 580 So. 2d, at 602–603, is an Olympic stretch, see *Harris* v. *Reed,* 489 U. S. 255, 274–276 (1989) (KENNEDY, J., dissenting). In any event, we know of no Florida authority supporting JUSTICE STEVENS's suggestion that all federal constitutional error (or even the kind claimed by Sochor) would be automatically "fundamental." Indeed, where, as here, valid aggravating factors would remain, instructional error involving another factor is not "fundamental." See *Occhicone* v. *State,* 570 So. 2d 902, 906 (Fla. 1990), cert. denied, 500 U. S. 938 (1991).

Finally, JUSTICE STEVENS's suggestion that the State waived its independent-state-ground defense, *post,* at 548–549, forgets that this defense goes to our jurisdiction and therefore cannot be waived. See *supra,* at 533.

agree is at least a constituent part of "the sentencer," weighed the heinousness factor himself. To be sure, Sochor acknowledges the rule in *Walton* v. *Arizona*, 497 U. S. 639 (1990), where we held it was no error for a trial judge to weigh an aggravating factor defined by statute with impermissible vagueness, when the State Supreme Court had construed the statutory language narrowly in a prior case. *Id.*, at 653. We presumed that the trial judge had been familiar with the authoritative construction, which gave significant guidance. *Ibid.* Sochor nonetheless argues that *Walton* is no help to the State, because Florida's heinousness factor has not been subjected to the limitation of a narrow construction from the State Supreme Court.

In *State* v. *Dixon*, 283 So. 2d 1 (1973), cert. denied, 416 U. S. 943 (1974), the Supreme Court of Florida construed the statutory definition of the heinousness factor:

> "It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim." 283 So. 2d, at 9.

Understanding the factor, as defined in *Dixon*, to apply only to a "conscienceless or pitiless crime which is unnecessarily torturous to the victim," we held in *Proffitt* v. *Florida*, 428 U. S. 242 (1976), that the sentencer had adequate guidance. See *id.*, at 255–256 (opinion of Stewart, Powell, and STEVENS, JJ.).

Sochor contends, however, that the State Supreme Court's post-*Proffitt* cases have not adhered to *Dixon*'s limitation as

stated in *Proffitt*, but instead evince inconsistent and over-broad constructions that leave a trial court without sufficient guidance. And we may well agree with him that the Supreme Court of Florida has not confined its discussions on the matter to the *Dixon* language we approved in *Proffitt*, but has on occasion continued to invoke the entire *Dixon* statement quoted above, perhaps thinking that *Proffitt* approved it all. See, *e. g.*, *Porter* v. *State*, 564 So. 2d 1060 (1990), cert. denied, 498 U. S. 1110 (1991); *Cherry* v. *State*, 544 So. 2d 184, 187 (1989), cert. denied, 494 U. S. 1090 (1990); *Lucas* v. *State*, 376 So. 2d 1149, 1153 (1979).

But however much that may be troubling in the abstract, it need not trouble us here, for our review of Florida law indicates that the State Supreme Court has consistently held that heinousness is properly found if the defendant strangled a conscious victim. See *Hitchcock* v. *State*, 578 So. 2d 685, 692–693 (1990), cert. denied, 502 U. S. 912 (1991); *Holton* v. *State*, 573 So. 2d 284, 292 (1990); *Tompkins* v. *State*, 502 So. 2d 415, 421 (1986); *Johnson* v. *State*, 465 So. 2d 499, 507, cert. denied, 474 U. S. 865 (1985); *Adams* v. *State*, 412 So. 2d 850, cert. denied, 459 U. S. 882 (1982). Cf. *Rhodes* v. *State*, 547 So. 2d 1201, 1208 (1989) (strangulation of semiconscious victim not heinous); *Herzog* v. *State*, 439 So. 2d 1372 (1983) (same). We must presume the trial judge to have been familiar with this body of case law, see *Walton*, 497 U. S., at 653, which, at a minimum, gave the trial judge "[some] guidance," *id.*, at 654. Since the Eighth Amendment requires no more, we infer no error merely from the fact that the trial judge weighed the heinousness factor. While Sochor responds that the State Supreme Court's interpretation of the heinousness factor has left Florida trial judges without sufficient guidance in other factual situations, we fail to see how that supports the conclusion that the trial judge was without sufficient guidance in the case at hand. See generally *Maynard* v. *Cartwright*, 486 U. S., at 361–364.

## III

Sochor also claims that when "the sentencer" weighed the coldness factor there was Eighth Amendment error that went uncorrected in the State Supreme Court.

### A

First, Sochor complains of consideration of the coldness factor by the jury, the first step in his argument being that the coldness factor was "invalid" in that it was unsupported by the evidence; the second step, that the jury in the instant case "weighed" the coldness factor; and the third and last step, that in Florida the jury is at least a constituent part of "the sentencer" for *Clemons* purposes. The argument fails, however, for the second step is fatally flawed. Because the jury in Florida does not reveal the aggravating factors on which it relies, we cannot know whether this jury actually relied on the coldness factor. If it did not, there was no Eighth Amendment violation. Thus, Sochor implicitly suggests that, if the jury was allowed to rely on any of two or more independent grounds, one of which is infirm, we should presume that the resulting general verdict rested on the infirm ground and must be set aside. See *Mills* v. *Maryland,* 486 U. S. 367, 376–377 (1988); cf. *Stromberg* v. *California,* 283 U. S. 359, 368 (1931). Just this Term, however, we held it was no violation of due process that a trial court instructed a jury on two different legal theories, one supported by the evidence, the other not. See *Griffin* v. *United States,* 502 U. S. 46 (1991). We reasoned that although a jury is unlikely to disregard a theory flawed in law, it is indeed likely to disregard an option simply unsupported by evidence. *Id.,* at 59–60. We see no occasion for different reasoning here, and accordingly decline to presume jury error.

### B

Sochor next complains that Eighth Amendment error in the trial judge's weighing of the coldness factor was left uncured by the State Supreme Court.

### 1

We can start from some points of agreement. The parties agree that, in Florida, the trial judge is at least a constituent part of "the sentencer" for *Clemons* purposes, and there is, of course, no doubt that the trial judge "weighed" the coldness factor, as he said in his sentencing order. Nor is there any question that the coldness factor was "invalid" for *Clemons* purposes, since *Parker* applied the *Clemons* rule where a trial judge had weighed two aggravating circumstances that were invalid in the sense that the Supreme Court of Florida had found them to be unsupported by the evidence. See 498 U. S., at 311. It follows that Eighth Amendment error did occur when the trial judge weighed the coldness factor in the instant case. What is in issue is the adequacy of the State Supreme Court's effort to cure the error under the rule announced in *Clemons*, that a sentence so tainted requires appellate reweighing or review for harmlessness.

### 2

We noted in *Parker* that the Supreme Court of Florida will generally not reweigh evidence independently, 498 U. S., at 319 (citing *Hudson* v. *State*, 538 So. 2d 829, 831 *(per curiam)*, cert. denied, 493 U. S. 875 (1989); *Brown* v. *Wainwright*, 392 So. 2d 1327, 1331–1332 (1981) *(per curiam)*), and the parties agree that, to this extent at least, our perception of Florida law was correct. The State argues, nonetheless, that, in this case, the State Supreme Court did support the death verdict adequately by performing harmless-error analysis. It relies on the excerpt from the state court's opinion quoted above, and particularly on the second through fourth sentences, as "declar[ing] a belief that" the trial judge's weighing of the coldness factor "was harmless beyond a reasonable doubt" in that it "did not contribute to the [sentence] obtained." *Chapman* v. *California*, 386 U. S. 18, 24 (1967). This, however, is far from apparent. Not only does the State Supreme Court's opinion fail so much as to mention

"harmless error," see *Yates* v. *Evatt,* 500 U. S. 391, 406 (1991), but the quoted sentences numbered one and five expressly refer to the quite different enquiry whether Sochor's sentence was proportional.

The State tries to counter this deficiency by arguing that the four cases cited following the fourth sentence of the quoted passage were harmless-error cases, citation to which was a shorthand signal that the court had reviewed this record for harmless error as well. But the citations come up short. Only one of the four cases contains language giving an explicit indication that the State Supreme Court had performed harmless-error analysis. See *Holton* v. *State,* 573 So. 2d 284, 293 (1990) ("We find the error was harmless beyond a reasonable doubt"). The other three simply do not, and the result is ambiguity.

Although we do not mean here to require a particular formulaic indication by state courts before their review for harmless federal error will pass federal scrutiny, a plain statement that the judgment survives on such an enquiry is clearly preferable to allusions by citation. In any event, when the citations stop as far short of clarity as these do, they cannot even arguably substitute for explicit language signifying that the State Supreme Court reviewed for harmless error.

## IV

In sum, Eighth Amendment error occurred when the trial judge weighed the coldness factor. Since the Supreme Court of Florida did not explain or even "declare a belief that" this error "was harmless beyond a reasonable doubt" in that "it did not contribute to the [sentence] obtained," *Chapman, supra,* at 24, the error cannot be taken as cured by the State Supreme Court's consideration of the case. It follows that Sochor's sentence cannot stand on the existing record of appellate review. We vacate the judgment of the

Supreme Court of Florida and remand the case for proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, concurring.

I join the Court's opinion but write separately to set forth my understanding that the Court does not hold that an appellate court can fulfill its obligations of meaningful review by simply reciting the formula for harmless error. In *Chapman* v. *California,* 386 U. S. 18 (1967), we held that before a federal constitutional error can be held harmless, the reviewing court must find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.,* at 24. This is a justifiably high standard, and while it can be met without uttering the magic words "harmless error," see *ante,* at 540, the reverse is not true. An appellate court's bald assertion that an error of constitutional dimensions was "harmless" cannot substitute for a principled explanation of how the court reached that conclusion. In *Clemons* v. *Mississippi,* 494 U. S. 738 (1990), for example, we did not hesitate to remand a case for "a detailed explanation based on the record" when the lower court failed to undertake an explicit analysis supporting its "cryptic," one-sentence conclusion of harmless error. *Id.,* at 753. I agree with the Court that the Florida Supreme Court's discussion of the proportionality of petitioner's sentence is not an acceptable substitute for harmless error analysis, see *ante,* at 539–540, and I do not understand the Court to say that the mere addition of the words "harmless error" would have sufficed to satisfy the dictates of *Clemons.*

CHIEF JUSTICE REHNQUIST, with whom JUSTICE WHITE and JUSTICE THOMAS join, concurring in part and dissenting in part.

I join in all that the Court has to say in rejecting Sochor's claim that the application of Florida's "heinousness" factor in

this case violated his constitutional rights. I also agree with the majority that Eighth Amendment error occurred when the trial judge weighed the invalid "coldness" factor in imposing Sochor's death sentence. Accordingly, I join Parts I, II, III–A, and III–B–1 of the Court's opinion. I dissent from Parts III–B–2 and IV of the opinion, however, for I believe that the Supreme Court of Florida cured this sentencing error by finding it harmless. I would thus affirm the judgment below and uphold the sentence.

When a reviewing court invalidates one or more of the aggravating factors upon which the sentencer relied in imposing a death sentence, the court may uphold the sentence by reweighing the remaining evidence or by conducting harmless-error analysis. *Clemons* v. *Mississippi*, 494 U. S. 738 (1990). As the majority observes, the Supreme Court of Florida does not in practice independently reweigh aggravating and mitigating evidence, and it did not do so in this case. *Ante*, at 539–540. In order to sustain Sochor's sentence, the court thus had to find any error harmless. In other words, it had to find beyond a reasonable doubt that the trial judge would still have imposed the death sentence if he had not considered the "coldness" factor when performing the weighing function required by Florida law. *Clemons* v. *Mississippi, supra,* at 753; *Chapman* v. *California,* 386 U. S. 18, 24 (1967). It seems clear to me that the court reached this conclusion, and that the conclusion is certainly justified by the facts of this case.

After finding that the trial judge erred in relying on the "coldness" factor in determining Sochor's sentence, the Supreme Court of Florida stated:

> "The trial court carefully weighed the aggravating factors against the lack of any mitigating factors and concluded that death was warranted. Even after removing the aggravating factor of cold, calculated, and premeditated there still remain three aggravating factors to be weighed against no mitigating circumstances. Striking

one aggravating factor when there are no mitigating circumstances does not necessarily require resentencing. *Robinson v. State,* 574 So. 2d 108 (Fla. 1991); *Holton v. State,* 573 So. 2d 284 (Fla. 1990); *James v. State,* 453 So. 2d 786 (Fla.), *cert. denied,* 469 U. S. 1098 . . . (1984); *Francois v. State,* 407 So. 2d 885 (Fla. 1981), *cert. denied,* 458 U. S. 1122 . . . (1982)." 580 So. 2d 595, 604 (1991).

The Court now holds that this passage fails to indicate that the error in this case was viewed as harmless. It is true that the passage does not mention the words "harmless error." But we have never held that a court must necessarily recite those words in determining whether an error had an effect on a certain result. In deciding whether the Supreme Court of Florida conducted adequate harmless-error analysis in this case, our focus should not be solely on the particular words and phrases it used to convey its thoughts. Whatever words it used, if they show that it concluded beyond a reasonable doubt that elimination of the "coldness" aggravating factor would have made no difference to Sochor's sentence, then it conducted adequate harmless-error analysis. See *Parker* v. *Dugger,* 498 U. S. 308, 319 (1991).

I am convinced by the passage quoted above that the Supreme Court of Florida believed, beyond a reasonable doubt, that the elimination of the "coldness" factor would have made no difference at all in this case. A review of the aggravating and mitigating evidence presented in this case demonstrates why. In making his sentencing determination, the trial judge found four aggravating circumstances, including the "coldness" aggravator. He found absolutely *no* mitigating evidence. After weighing the four aggravating circumstances against zero mitigating circumstances, the trial judge imposed the death penalty. The Supreme Court of Florida later found the "coldness" aggravating circumstance invalid. It observed, however, that three valid aggravators were left to be balanced against the complete lack of mitigating evidence. On that basis, the court concluded

that resentencing was unnecessary. After reaching that conclusion, the court cited four cases in which it had invalidated aggravating factors but had upheld the death sentences, having found that the inclusion of those aggravators made no difference to the weighing process. One of the cases cited in fact made explicit mention of harmless-error analysis. *Holton* v. *State*, 573 So. 2d 284, 293 (1990) ("Under the circumstances of this case, we cannot say there is any reasonable likelihood the trial court would have concluded that the three valid aggravating circumstances were outweighed by the mitigating factors. We find the error was harmless beyond a reasonable doubt") (citation omitted). See *supra*, at 542–543.

In my mind, it is no stretch to conclude that the court saw this case for what it is—a paradigmatic example of the situation where the invalidation of an aggravator makes absolutely no difference in the sentencing calculus. We have previously observed that the invalidation of an aggravating circumstance results in the removal of a "thumb . . . from death's side of the scale." *Stringer* v. *Black*, 503 U. S. 222, 232 (1992). Precisely for this reason, we require appellate courts to either reweigh the evidence or perform harmless-error analysis if they seek to affirm a death sentence after invalidating an aggravator. In a case such as this, however, where there is not so much as a thumbnail on the scale in favor of mitigation, I would not require appellate courts to adhere to any particular form of words to demonstrate that which is evident. If the trial judge in this case had eliminated the "coldness" aggravator from the weighing process, and had balanced the three valid aggravators against the complete absence of mitigating evidence, the absent mitigating evidence would still have failed to outweigh the aggravating evidence, and the sentence would still have been death. Although it did so cursorily, I am convinced that the Supreme Court of Florida found the inclusion of the invalid "coldness" factor harmless beyond a reasonable doubt.

It seems that the omission of the words "harmless error" from the opinion below is the root of this Court's dissatisfaction with it. In all likelihood, the Supreme Court of Florida will reimpose Sochor's death sentence on remand, perhaps by appending a sentence using the talismanic phrase "harmless error." Form will then correspond to substance, but this marginal benefit does not justify our effort to supervise the opinion writing of state courts. I would therefore affirm the judgment below.

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, concurring in part and dissenting in part.

We granted certiorari to consider two questions.[1] The Court answers the first question in Parts III–B and IV of its opinion, see *ante*, at 538–540, which I join. I do not, however, agree with the Court's treatment of the plain error that occurred when the trial judge instructed the jury at the penalty phase of the trial. See *ante*, at 532–534. Florida argues that this error was harmless because the death sentence was imposed by the judge rather than the jury. The Court today does not address this argument because it concludes that petitioner waived the error by failing to object to the instruction. I disagree with this Court in its effort

---

[1] Petitioner included four questions in his petition for writ of certiorari; however, the Court limited its grant to a consideration of questions two and four, which petitioner framed as follows:

"2. Did the Florida Supreme Court's review of petitioner's death sentence violate the Eighth and Fourteenth Amendments where that court upheld the sentence even though the trial court had instructed the jury on, and had applied, an improper aggravating circumstance, where the Florida Supreme Court did not reweigh the evidence or conduct a harmless error analysis as to the effect of improper use of the circumstance on the jury's penalty verdict?"

"4. Did the application of Florida's 'especially heinous, atrocious, or cruel' aggravating circumstance at bar violate the Eighth and Fourteenth Amendments?" Pet. for Cert. ii.

to avoid the issue and with the Florida Supreme Court in its appraisal of the error.

## I

There is no dispute that the instruction prescribing the so-called heinous, atrocious, or cruel aggravating circumstance (or heinousness factor, according to the Court's nomenclature)[2] was unconstitutionally vague under our decision in *Maynard* v. *Cartwright*, 486 U. S. 356 (1988).[3] In *Cartwright*, the Court explained that "[t]o say that something is 'especially heinous' merely suggests that the individual jurors should determine that the murder is more than just 'heinous,' whatever that means, and an ordinary person could honestly believe that every unjustified, intentional taking of human life is 'especially heinous.'" *Id.*, at 364 (citation omitted). Although a state court may adopt a limiting construction of a vague capital sentencing aggravating circumstance to give meaningful guidance to the sentencer, see *id.*, at 360, 365; *Walton* v. *Arizona*, 497 U. S. 639, 653 (1990); *Lewis* v. *Jeffers*, 497 U. S. 764, 778–779 (1990); *Godfrey* v. *Georgia*, 446 U. S. 420, 428 (1980) (plurality opinion), or a state appellate court might apply a limiting definition of the aggravating circumstance to the facts presented, see *Cartwright*, 486 U. S., at 364; *Walton*, 497 U. S., at 653; *Jeffers*, 497 U. S., at 778–779; *Godfrey*, 446 U. S., at 429, the Florida Supreme

---

[2] The trial judge gave the following instruction with respect to the heinous, atrocious, or cruel aggravating circumstance: "The aggravating circumstances that you may consider are limited to any of the following that are established by the evidence. . . . [N]umber three, the crime for which the defendant is to be sentenced was especially wicked, evil, atrocious or cruel." App. 326–327.

[3] See *Walton* v. *Arizona*, 497 U. S. 639, 653 (1990) ("It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face"); *Godfrey* v. *Georgia*, 446 U. S. 420, 428 (1980) ("There is nothing in these few words, ['outrageously or wantonly vile, horrible and inhuman,'] standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence").

Court has failed to do so here. In *Proffitt* v. *Florida*, 428 U. S. 242, 255–256 (1976), this Court approved the limiting construction adopted by the Florida Supreme Court for the heinousness factor;[4] however, the guidance given in *State* v. *Dixon*, 283 So. 2d 1 (Fla. 1973), was certainly not provided in the bare bones of the instruction given by the trial court in this case. See n. 2, *supra*.

## II

Petitioner's failure to object to the instruction at trial did not deprive the Florida Supreme Court or this Court of the power to correct the obvious constitutional error. First, petitioner did object to the vagueness of this aggravating circumstance in a Motion To Declare Section 921.141, Florida Statutes Unconstitutional Re: Aggravating and Mitigating Circumstances at the start of trial, see App. 8, 10;[5] however, that motion was denied. See 1 Tr. 9. Second, the Florida Supreme Court, though noting that petitioner had failed to make a contemporaneous objection to the instruction at the time of trial, nevertheless went on to reach the merits of petitioner's claim. See 580 So. 2d 595, 603 (1991). Thus, the Florida Supreme Court, far from providing us with a plain statement that petitioner's claim was procedurally barred, see *Michigan* v. *Long*, 463 U. S. 1032, 1042 (1983), has merely said that the claim was "not preserved for appeal," 580 So. 2d, at 602, and has given even further indica-

---

[4] In *State* v. *Dixon*, 283 So. 2d 1 (Fla. 1973), cert. denied, 416 U. S. 943 (1974), the Florida courts had construed the heinousness factor to apply only to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." 283 So. 2d, at 9.

[5] In particular, petitioner alleged:

"Almost any capital felony would appear especially cruel, heinous and atrocious to the layman, particularly any felony murder. Examination of the widespread application of this circumstance indicates that reasonable and consistent application is impossible. This standard is vague and overbroad and provides no basis for distinguishing one factual situation from another. *Godfrey* v. *Georgia*, 446 U. S. 420 (1980)." App. 10.

tion that petitioner's claim was not procedurally barred by proceeding to the merits, albeit in the alternative. Third, and most important, the state court may review a fundamental error despite a party's failure to make a contemporaneous objection in the trial court,[6] and it unquestionably has the power to review this error even though the error may not have been properly preserved for appeal.[7] As the Florida Supreme Court explained, "[f]undamental error has been defined as 'error which goes to the foundation of the case or goes to the merits of the cause of action,'" and although it is to be applied "'very guardedly,'" it nevertheless is to be applied in those "rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." *Ray* v. *State*, 403 So. 2d 956, 960 (1981) (citations omitted).[8] Presumably because the

---

[6] See, *e. g., Ray* v. *State*, 403 So. 2d 956, 960 (Fla. 1981) ("This Court has indicated that for error to be so fundamental that it may be urged on appeal, though not properly presented below, the error must amount to a denial of due process"); *Castor* v. *State*, 365 So. 2d 701, 704, n. 7 (Fla. 1978) (same); *State* v. *Smith*, 240 So. 2d 807, 810 (Fla. 1970) (same).

[7] The Florida Supreme Court's statement that none of the alleged errors in the jury instructions had been "preserved for appeal," 580 So. 2d 595, 602 (1991), merely raised the question whether they should nevertheless be reviewed under the "fundamental error" exception. That question was answered by the court's statement that petitioner's claims "have no merit." *Id.*, at 603.

[8] The Court clearly misconstrues my point about fundamental error if it understands me to be saying that all errors concerning an improper instruction on the heinous, atrocious, or cruel aggravating circumstance "would automatically be 'fundamental.'" *Ante*, at 535, n. Quite simply, my point is *not* that such error necessarily constitutes fundamental error, but rather, that such error can be the subject of fundamental error review. In other words, the Florida Supreme Court is not without power, even when the defendant has failed to raise an objection at trial, to consider whether such error constitutes fundamental error. Although the Florida Supreme Court may not necessarily find fundamental error in the particular instance, it is, nevertheless, willing and able to consider whether fundamental error has occurred. See, *e. g., Walton* v. *State*, 547 So. 2d 622, 625–626 (Fla. 1989) ("Absent fundamental error, failure to object to the

state court reviews for fundamental error, but did not find such error here, the State did not oppose the petition for certiorari by arguing procedural default. See Brief in Opposition 11 (State argued heinousness factor was not unconstitutionally vague). Under these circumstances, the State has waived any possible procedural objection to our consideration of the erroneous jury instruction,[9] and this Court, contrary to its protestation, is not "without authority" to address petitioner's claim. *Ante,* at 534.

## III

We should reject unequivocally Florida's submission that erroneous jury instructions at the penalty phase of a capital case are harmless because the trial judge is the actual sentencer and the jury's role is purely advisory. That submission is unsound as a matter of law, see, *e. g., Riley* v. *Wainwright,* 517 So. 2d 656, 659 (Fla. 1987); *Hall* v. *State,* 541 So. 2d 1125, 1129 (Fla. 1989), and as a matter of fact.

As a matter of law, the jury plays an essential role in the Florida sentencing scheme. Under *Tedder* v. *State,* 322

jury instructions at trial precludes appellate review. . . . We find no fundamental error in the instructions"), cert. denied, 493 U. S. 1036 (1990); *Smalley* v. *State,* 546 So. 2d 720, 722 (Fla. 1989).

[9] See *Oklahoma City* v. *Tuttle,* 471 U. S. 808, 816 (1985) ("Our decision to grant certiorari represents a commitment of scarce judicial resources with a view to deciding the merits of one or more of the questions presented in the petition. Nonjurisdictional defects of this sort should be brought to our attention *no later* than in respondent's brief in opposition to the petition for certiorari; if not, we consider it within our discretion to deem the defect waived").

Contrary to the Court's suggestion that I have forgotten that the "defense" is jurisdictional, see *ante,* at 535, n., I believe the Court has forgotten that we have ample power to review a state court's disposition of a federal question on its merits. If the Florida Supreme Court has jurisdiction to consider petitioner's claim, as I believe it does when it engages in fundamental error review and reaches the merits of the claim, then this Court also has jurisdiction to reach the merits.

So. 2d 908 (Fla. 1975), and its progeny,[10] a jury's recommendation must be given "great weight." *Id.*, at 910. The Florida Supreme Court explained that a jury recommendation of a life sentence can be overturned only if "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." *Ibid.*[11]

Similarly, a jury's recommendation of a death sentence must also be given great weight.[12]  For example, in *Stone* v. *State*, 378 So. 2d 765, cert. denied, 449 U. S. 986 (1980), the Florida Supreme Court discussed a challenge to a death sentence imposed after a jury had recommended a sentence

---

[10] See, *e. g., Thompson* v. *State*, 328 So. 2d 1 (Fla. 1976).

[11] As the Eleventh Circuit observed about the Florida Supreme Court: "That the court meant what it said in *Tedder* is amply demonstrated by the dozens of cases in which it has applied the *Tedder* standard to reverse a trial judge's attempt to override a jury recommendation of life.  *See, e. g., Wasko* v. *State*, 505 So. 2d 1314, 1318 (Fla. 1987); *Brookings* v. *State*, 495 So. 2d 135, 142–43 (Fla. 1986); *McCampbell* v. *State*, 421 So. 2d 1072, 1075–76 (Fla. 1982); *Goodwin* v. *State*, 405 So. 2d 170, 172 (Fla. 1981); *Odom* v. *State*, 403 So. 2d 936, 942–43 (Fla. 1981), *cert. denied*, 456 U. S. 925 . . . (1982); *Neary* v. *State*, 384 So. 2d 881, 885–88 (Fla. 1980); *Malloy* v. *State*, 382 So. 2d 1190, 1193 (Fla. 1979); *Shue* v. *State*, 366 So. 2d 387, 390–91 (Fla. 1978); *McCaskill* v. *State*, 344 So. 2d 1276, 1280 (Fla. 1977); *Thompson* v. *State*, 328 So. 2d 1, 5 (Fla. 1976)."  *Mann* v. *Dugger*, 844 F. 2d 1446, 1451 (1988) (en banc), cert. denied, 489 U. S. 1071 (1989).

[12] *Smith* v. *State*, 515 So. 2d 182, 185 (Fla. 1987) ("[W]e approve the death sentence on the basis that a jury recommendation of death is entitled to great weight"), cert. denied, 485 U. S. 971 (1988); see also *LeDuc* v. *State*, 365 So. 2d 149, 151 (Fla. 1978) ("The primary standard for our review of death sentences is that the recommended sentence of a jury should not be disturbed if all relevant data w[ere] considered, unless there appear strong reasons to believe that reasonable persons could not agree with the recommendation"), cert. denied, 444 U. S. 885 (1979); *Ross* v. *State*, 386 So. 2d 1191, 1197 (Fla. 1980) (same); *Middleton* v. *State*, 426 So. 2d 548, 552–553 (Fla. 1982) (approving trial court's imposition of death sentence and reiterating that jury had recommended death), cert. denied, 463 U. S. 1230 (1983); *Francois* v. *State*, 407 So. 2d 885, 891 (Fla. 1981) (same), cert. denied, 458 U. S. 1122 (1982); cf. *Grossman* v. *State*, 525 So. 2d, at 839, n. 1 ("We have . . . held that a jury recommendation of death should be given great weight").

of death. The petitioner had based his challenge on a similar case, *Swan* v. *State*, 322 So. 2d 485 (Fla. 1975), in which the court had reversed the death sentence. In affirming Stone's sentence, however, the court pointed out that the critical difference between Stone's case and Swan's case was that "Swan's jury recommended mercy while Stone's recommended death and the jury recommendation is entitled to great weight. *Tedder* v. *State*, 322 So. 2d 908 (Fla. 1975)." 378 So. 2d, at 772.[13]

As a matter of fact, the jury sentence is the sentence that is usually imposed by the Florida Supreme Court. The State has attached an appendix to its brief, see App. to Brief for Respondent A1–A70, setting forth data concerning 469 capital cases that were reviewed by the Florida Supreme Court between 1980 and 1991. In 341 of those cases (73%), the jury recommended the death penalty; in none of those cases did the trial judge impose a lesser sentence. In 91 cases (19%), the jury recommended a life sentence; in all but one of those cases, the trial judge overrode the jury's recommended life sentence and imposed a death sentence. In 69 of those overrides (77%), however, the Florida Supreme Court vacated the trial judge's sentence and either imposed a life sentence itself or remanded for a new sentencing hearing.[14]

---

[13] The Florida courts have long recognized the integral role that the jury plays in their capital sentencing scheme. See, *e. g.*, *Messer* v. *State*, 330 So. 2d 137, 142 (Fla. 1976) ("[T]he legislative intent that can be gleaned from Section 921.141 . . . [indicates that the legislature] sought to devise a scheme of checks and balances in which the input of the jury serves as an integral part"); see also *Riley* v. *Wainwright*, 517 So. 2d 656, 657 (Fla. 1988) ("This Court has long held that a Florida capital sentencing jury's recommendation is an integral part of the death sentencing process"); *Lamadline* v. *State*, 303 So. 2d 17, 20 (Fla. 1974) (right to sentencing jury is "an essential right of the defendant under our death penalty legislation").

[14] In 37 out of the 469 cases, there was no jury recommendation either because the defendant had waived the right to a jury trial or had offered a plea, or because the jury selection or trial had to be redone.

Two conclusions are evident. First, when the jury recommends a death sentence, the trial judge will almost certainly impose that sentence. Second, when the jury recommends a life sentence, although overrides have been sustained occasionally, the Florida Supreme Court will normally uphold the jury rather than the judge. It is therefore clear that in practice, erroneous instructions to the jury at the sentencing phase of the trial may make the difference between life or death.

When a jury has been mistakenly instructed on the heinous, atrocious, or cruel aggravating circumstance, the Florida Supreme Court, acknowledging the important role that the jury plays in the sentencing scheme, has held that the error was reversible. For example, in *Jones* v. *State*, 569 So. 2d 1234 (1990), in which the jury was instructed on the heinousness factor, but the body had been sexually abused *after* death, and the death had occurred quickly as the result of a gunshot wound, the Florida Supreme Court concluded that the heinousness factor was inapplicable and that its inclusion in the instructions constituted reversible error. Similarly, in *Omelus* v. *State*, 584 So. 2d 563 (1991), when the trial court had instructed the jury on the heinousness factor even though the defendant had contracted with a third party to perform the killing, and had no knowledge of how the murder was accomplished, the Florida Supreme Court remanded the case for resentencing. Thus, the Florida Supreme Court recognized that when the jury's deliberative process is infected by consideration of an inapplicable aggravating factor, the sentence must be vacated unless the error is harmless beyond a reasonable doubt.[15] Similarly, the court has recog-

---

[15] As the Eleventh Circuit observed:

"[T]he Florida Supreme Court will vacate the [death] sentence and order resentencing before a new jury if it concludes that the proceedings before the original jury were tainted by error. . . . In those cases, the supreme court frequently focuses on how the error may have affected the jury's recommendation. . . . Such a focus would be illogical unless the supreme

nized that when the jury is given an instruction that is unconstitutionally vague, the jury's deliberative process is also tainted,[16] and a remand is appropriate so that the jury can reach a sentence that is not influenced by the unconstitutional factor unless the error is harmless beyond a reasonable doubt.

The harmless-error inquiry to be conducted by the Florida Supreme Court on remand should, therefore, encompass the erroneous jury instruction on the heinousness factor and the error in submitting an instruction on the cold, calculated, and premeditated aggravating circumstance to the jury when the evidence did not support such an instruction, as well as the error committed by the trial judge in relying on that factor.

For the reasons given above, I concur in Parts I, III–B, and IV, and respectfully disagree with Parts II–A, II–B, and III–A.

JUSTICE SCALIA, concurring in part and dissenting in part.

I join the Court's opinion insofar as it rejects petitioner's challenge to the heinous, atrocious, and cruel aggravating factor. I dissent, however, from its holding that the death sentence in this case is unconstitutional because the Florida Supreme Court failed to find "harmless error" after having invalidated the trial judge's "coldness" finding.

Even without that finding, three unquestionably valid aggravating factors remained, so that the death sentence com-

---

court began with the premise that the jury's recommendation must be given significant weight by the trial judge. Once that premise is established, a focus on how the error may have affected the jury's recommendation makes sense: if the jury's recommendation is tainted, then the trial court's sentencing decision, which took into account that recommendation, is also tainted." *Mann* v. *Dugger*, 844 F. 2d, at 1452–1453 (footnote omitted).

[16] As the court explained in *Riley* v. *Wainwright*, 517 So. 2d, at 659: "If the jury's recommendation, upon which the judge must rely, results from an unconstitutional procedure, then the entire sentencing process necessarily is tainted by that procedure."

plied with the so-called "narrowing" requirement imposed by the line of cases commencing with *Furman* v. *Georgia,* 408 U. S. 238 (1972). The constitutional "error" whose harmlessness is at issue, then, concerns only the inclusion of the "coldness" factor in the weighing of the aggravating factors against the mitigating evidence petitioner offered. It has been my view that the Eighth Amendment does not require any consideration of mitigating evidence, see *Walton* v. *Arizona,* 497 U. S. 639, 656 (1990) (opinion concurring in part and concurring in judgment)—a view I am increasingly confirmed in, as the byzantine complexity of the death penalty jurisprudence we are annually accreting becomes more and more apparent. Since the weighing here was in my view not constitutionally required, any error in the doing of it raised no federal question. For that reason, I would affirm the death sentence.