MOLLISON, Senior Judge
(concurring in part, dissenting in part):
I concur in Judge DeCicco’s disposition of all assignments of error with the exception of Issue II, pertaining to proof of the second aggravating factor, and Issue XXXII, pertaining to sentence appropriateness. As to Issue II, I concur with Judge Clark insofar as he concludes that the second aggravating factor was established beyond a reasonable doubt and that a tie vote by us on a finding of fact constitutes an affirmance of that finding of fact. I write to add, however, my opinion that should Judge DeCicco’s view on *613 the second aggravating factor prevail, the appellant should receive a rehearing on sentence. Finally, I dissent as to the disposition of Issue XXXII on sentence appropriateness, as I am of the view that the ends of good order and discipline and the welfare of society will be satisfied with life imprisonment in this case. I would commute the death penalty accordingly.
In United States v. Loving, 41 M.J. 213 (1994), the United States Court of Appeals for the Armed Forces described the nature of the capital sentencing procedure in trials by court-martial. Id. at 248; see also United States v. Curtis, 38 M.J. 530, 544 n. 3 (N.M.C.M.R.1993) (Mollison, J., dissenting). In effect, it noted that courts-martial are a hybrid of the “non-weighing” and “weighing” schemes employed by the states. Before a military accused may be sentenced to death, the court members must unanimously find that one or more enumerated aggravating factors have been proven beyond a reasonable doubt, and then the members must unanimously agree that any extenuating or mitigating circumstances are substantially outweighed by any aggravating circumstances, including the aggravating factor(s). Stated another way, there is a capital sentencing gate through which the members may pass only by finding beyond a reasonable doubt the existence of enumerated aggravating factors, and once through the gate, the members must then weigh extenuating and mitigating circumstances against aggravating circumstances, which include the “gate” factors they have found. Therefore, when this Court invalidates a finding respecting one of the factors, that finding also impacts upon the weighing function because the invalidated factor has also been tossed into the balance pan as an aggravating circumstance.
In Clemons v. Mississippi 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the United States Supreme Court confronted issues raised in the context of the Mississippi capital-sentencing procedure — a scheme remarkably similar to ours. Clemons had been sentenced to death on two aggravating circumstances, one valid (“robbery for pecuniary gain”) and one invalid (“especially heinous, atrocious or cruel”). The Supreme Court held that because Mississippi is a weighing jurisdiction, it was insufficient for the state appellate court to affirm the death penalty automatically because there remained at least one valid aggravating circumstance. Under this scheme, the death penalty could not be affirmed unless a state court had conducted constitutional harmless-error analysis or reweighing. Clemons’ judgment could not be affirmed on the basis of “reweighing” because the state appellate court’s opinion was virtually silent on the particulars of the mitigating evidence presented to the jury and because it was not clear whether the state court had heeded the importance of the sentenceFs consideration of the accused’s mitigating evidence. Id. at 752, 110 S.Ct. at 1450. The judgment likewise could not rest on harmless-error analysis, though the state court had concluded in a “cryptic holding” that beyond a reasonable doubt the accused’s sentence to death would have been the same without the invalid circumstance. The Supreme Court noted “that it would be permissible to approach the harmless-error question in this fashion, but if this is the course of action the [Mississippi] court took, its ultimate conclusion is very difficult to accept.” Id at 753, 110 S.Ct. at 1451. The prosecution repeatedly emphasized the invalid factor, while placing little emphasis on the valid one. Under these circumstances, a detailed explanation based on the record was required to justify a finding that the error was harmless. Id at 753-54, 110 S.Ct. at 1450-51.
In Stringer v. Black, 503 U.S. 222, 229-30, 112 S.Ct. 1130, 1135-36, 117 L.Ed.2d 367 (1992), the United States Supreme Court again considered the impact of the erroneous inclusion of an invalid aggravating circumstance under the Mississippi capital-sentencing scheme. The Supreme Court reiterated the important differences between weighing and non-weighing schemes. In particular, it noted that appellate courts in weighing jurisdictions may not “affirm a death sentence without a thorough analysis of the role an invalid aggravating factor played in the sentencing process.” 503 U.S. at 230, 112 S.Ct. at 1136. Close appellate scrutiny of the import and effect of invalid aggravating factors is required. “In order for a[n] ... appellate *614 court to affirm a death sentence after the sentencer was instructed to consider an invalid factor, the court must determine what the sentencer would have done absent the factor.” Id. (emphasis added). Moreover, “the reviewing court in a weighing [jurisdiction] may not make the automatic assumption that such a factor has not infected the weighing process,” and “when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death’s side of the scale.” Id. at 231, 112 S.Ct. at 1137; see also Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992).
In Loving, the Court of Appeals for the Armed Forces held that when an invalid aggravating circumstance is tossed into the balance pan, this Court may also “either reweigh the circumstances or conduct harmless-error analysis.” 41 M.J. at 248 (citing Stringer, 503 U.S. at 230,112 S.Ct. at 1136).[1]
The standard for constitutional harmless-error analysis is well settled. Under that standard, we may not affirm unless we can say that there is no reasonable possibility the invalid circumstance contributed to the decision to award the death penalty, and before we can draw that conclusion, we must find that the error was unimportant to everything else considered on the issue in question. See Sochor, 504 U.S. at 539, 112 S.Ct. at 2122-23 (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)); cf. United States v. Palacios, 37 M.J. 366, 368 (C.M.A.1993). I am unaware, however, of any articulation of the standard to be applied when this Court undertakes to “reweigh.” However, in Curtis, this Court elected to conduct harmless-error analysis because we believed we ought not “substitute our judgment for that of the members.” 38 M.J. at 534. In fact, insofar as we may undertake sentence reassessment in any case, our obligation has always been to focus on what the members would have done in the absence of the error and not to substitute our judgment for theirs. United States v. Jones, 39 M.J. 315, 317 (C.M.A.1994); United States v. Peoples, 29 M.J. 426 (C.M.A.1990); United States v. Sales, 22 M.J. 305 (C.M.A.1986).
In light of the fact that our capital sentencing procedure is in the nature of a “weighing” scheme and that the death penalty may only be awarded with the unanimous concurrence of the members, I am of the opinion that, whatever we call it — harmless-error analysis, reweighing, sentence reassessment, or all of the above — before we may affirm the death sentence of any Sailor or Marine, we must be convinced beyond a reasonable doubt that the sentence would have been the same had the invalid aggravating circumstance not been present. Stringer 503 U.S. at 230, 112 S.Ct. at 1136; Jones, 39 M.J. at 317; Curtis, 38 M.J. at 534. If we cannot so state, the servicemember is at the least entitled to have his sentence redetermined by the body in which Congress vested exclusive authority to award the death penalty in the first place — a panel of members.
I do not find in Judge DeCicco’s opinion the “thorough analysis” on this point required by Stringer. I respectfully take exception to the conclusion that the intent involved in the second aggravating factor was a “de minimis matter.” This factor, after all, is a factor which is sufficiently important to qualify a non-capital premeditated murder as a capital one. Only a conclusion is stated respecting harmless-error analysis, and such was condemned in Clemons. Here, the members found the murder was preceded by the intentional infliction of substantial physical harm or prolonged, substantial mental or physical pain and suffering to the victim. Four of my brethren say the members were in error. If my brethren are correct, it cannot be fairly said that this error was unimportant to everything else considered on *615 the issue of the death penalty or that there is no reasonable possibility this circumstance contributed to the decision to award the death sentence. Thus, if Judge DeCicco’s opinion were the decision of the court on this issue, the appellant should receive a rehearing on sentence.

. The Court also cited Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). In Barclay, the Supreme Court approved the harmless-error analysis by the Florida Supreme Court. The Florida scheme is a weighing scheme whereby the jury makes a sentence recommendation which the trial judge may override. The Florida scheme did not establish any special standard for the weighing process, itself. 463 U.S. at 953-54, 103 S.Ct. at 3426-27. In trials by court-martial, the members, not the trial judge, may sentence the accused to death.