IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-0184

SHAUN D. REED, aka SHAWN
D. REED,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

Opinion filed January 19, 2017.

An appeal from the Circuit Court for Washington County.
Christopher N. Patterson, Judge.

Nancy A. Daniels, Public Defender, and Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Donna A. Gerace, Assistant Attorney General, and David Llanes, Assistant Attorney General, Tallahassee, for Appellee.

WINOKUR, J.

Shaun D. Reed ("Reed") appeals his conviction for burglary of an occupied dwelling accompanied by an assault or battery, contending that the trial court erred in instructing the jury on the stealthy-entry inference set forth in section 810.07(1), Florida Statutes. While the trial court erred in giving this instruction, we affirm

because the error was harmless.

## I.

The State filed a three-count information charging Reed with 1) attempted second-degree murder of Dwight Lamar Murphy; 2) attempted second-degree murder of Stephanie L. Jackson ("Jackson"); and 3) burglary of an occupied dwelling accompanied by an assault or battery. Following trial, the jury found Reed guilty of the lesser-included offense of aggravated battery as to Count 1 and found him guilty as charged on Counts 2 and 3. Reed was sentenced to concurrent prison terms of fifteen years on Count 1, fifteen years on Count 2, and forty-five years on Count 3.[1]

## II.

On the day of the offenses, Reed was a passenger in a car driven by his cousin, Selena Godwin. Reed asked Godwin to "roll by" the neighborhood where Jackson, his ex-girlfriend, lived. Once there, Reed saw Jackson's son, Tramar Jackson, walking on the street with his girlfriend, Alice Hathaway, accompanied by a man whom Reed did not recognize, but was later identified as Dwight Murphy. Apparently, Reed suspected Murphy of involvement with Jackson. It was dusk, and the street lights had by then come on. As Godwin approached a stop sign, Reed leaped from the passenger side and ran toward Jackson's apartment.

---

[1] Reed does not challenge his convictions as to Counts 1 and 2.

Laquan Merriel was sitting on her porch with her cousin when she saw Reed jump from Godwin's vehicle. Merriel testified that Reed was not attempting to conceal himself and that he was "easy" to see, wearing a light colored shirt and dark pants. Merriel thought nothing of it at the time, but she and her cousin went to investigate when they heard screams.

In the meantime, Tramar Jackson, Hathaway, and Murphy had returned home to Jackson's apartment. Tramar did not enter the apartment at the time. The apartment had two doors: a screen door without a lock and a main solid door. Hathaway unlocked the main door and went inside with Murphy, leaving the main door open while the screen door automatically swung closed behind them.

Murphy went to Jackson's room where she was sleeping and began massaging her back. At that moment, Reed entered the room and began stabbing Murphy. When Jackson ran for the door, Reed began stabbing her also, saying, "bitch, I told you not to be cheating on me." Hathaway ran outside yelling for Tramar, who came back to the apartment, saw Reed stabbing Jackson, hit Reed, and told him to get off of his mother, at which point Reed fled.

### III.

In accordance with section 810.07(1), Florida Statutes, evidence in a burglary trial that the defendant entered a structure or conveyance "stealthily and without consent of the owner or occupant thereof is prima facie evidence of

3

entering with intent to commit an offense." The trial judge instructed the jury on this inference over Reed's objection that the evidence did not support the contention that he entered Jackson's apartment "stealthily."

Before the trial judge may instruct the jury on the section 810.07 inference, the State "must present evidence of the owner or occupant's lack of consent *and* that entry into the structure was done 'stealthily.'" Lanzo v. State, 73 So. 3d 817, 819 (Fla. 5th DCA 2011). The statute does not define "stealthily," but Florida courts have interpreted the term to mean activity that is "'surreptitious, furtive, or sly.'" Id. (quoting J.A.S. v. State, 952 So. 2d 638, 640 (Fla. 2d DCA 2007)). In other words, a defendant acts "stealthily" when his or her actions are done in a "furtive or clandestine manner to avoid discovery." Id.

Here, there is no evidence that Reed acted in a furtive or clandestine manner. First, contrary to the State's assertions, jumping from a moving vehicle in a residential neighborhood with daylight still on the horizon and running toward Jackson's apartment was conspicuous behavior bound to attract attention. See id. at 820 (holding that defendant did not act stealthily where he was, among other factors, "seen at the open garage door of a house on a residential street during daylight hours and in full view of any passerby").

Second, Reed's behavior in fact did attract attention. Merriel and her cousin both observed him jump from the vehicle. The presence of visible bystanders,

4

including Tramar Jackson, who was standing outside talking with a friend, suggests that Reed was indifferent as to whether he was observed. Indeed, Merriel testified that Reed did not appear to make any effort to conceal himself and that he was "easy to see."

Third, although there is no direct evidence on precisely how Reed entered Jackson's apartment, the circumstantial evidence indicates that he did so through the front door, which had been left open with only the screen door closed. There is no indication, and the State does not argue, that Reed entered by any other way. In any event, the absence of evidence on his manner of entry militates in Reed's favor. See L.A.H. v. State, 197 So. 3d 1265, 1267 (Fla. 2d DCA 2016) ("The State presented no evidence as to how L.A.H. entered the car and thus presented no evidence that the entry was stealthy.").

Ultimately, the circumstances of this case indicate that Reed made no effort to conceal himself to enter the apartment and did not appear to care whether he was discovered. In short, the record discloses no evidence on stealthy entry that would support the disputed instruction.

The State argues that Reed was able to move through Jackson's apartment to her bedroom without being detected even though there were four people in the apartment, contending that the fact that he was not observed is evidence that he moved stealthily. While it is unclear how Reed's post-entry behavior demonstrates

the stealthy manner of his entry, there is no reason that any of the occupants should have detected Reed in the first place. First, one of the four occupants was an infant. Second, Hathaway was in a back bedroom putting the child to sleep when Reed entered. Finally, Murphy and Jackson, the other two occupants to which the State refers, were in Jackson's bedroom. Again, under the circumstances, there is no reason that any of them should have noticed Reed enter, so this is not evidence that he entered stealthily.

IV.

In conclusion, the trial court erred in giving the stealthy-entry instruction because there was no indication that Reed entered Jackson's apartment stealthily. To the contrary, Reed's actions before entry were conspicuous, and the absence of direct evidence on precisely how Reed entered the apartment does not serve as evidence of stealth. Nonetheless, we can affirm the burglary conviction if the error was harmless. See Daughtry v. State, 804 So. 2d 426, 427-28 (Fla. 4th DCA 2001) (noting that the giving of the stealthy-entry instruction without evidence of stealth is subject to harmless-error analysis). We find that the error was harmless.

First, the State barely mentioned the stealthy-entry inference in its closing argument. In its initial closing argument, the State devoted only two sentences to this matter:

> The law says you may infer Shawn Reed had the
> intent to commit a crime inside if the entering was done

stealthily and without the consent of the owner or the occupant. And again, he didn't get permission to go inside, didn't knock on the door, he just went in.

This was the prosecutor's only mention of the stealthy-entry inference to the jury. Reed's counsel addressed this argument immediately in closing:

> And one of the things the judge will tell you is that you can infer, you don't have to, but you can believe that Shawn Reed had the intent to commit a crime inside a structure if the entering of the structure was done stealthily. Do you sneak around, do you go in a window, do you do it after dark? We had conflicting versions of what time it was, but I think after you've heard all the evidence you can probably conclude at least it was during daytime, maybe around dusk but it wasn't dark yet. He just jumped out of the car in front of everybody, a lot of people saw him, and headed up there towards the apartment. So there's nothing stealthily about the entry.

The prosecutor gave no response to this argument in the rebuttal closing. Instead, perhaps because defense counsel had so persuasively dismantled the stealthy-entry inference, the prosecutor argued that the evidence showed that Reed intended to commit a crime when he entered Jackson's apartment, without reference to the stealthy-entry inference.[2] The jury was left with nothing but a strong argument that the stealthy-entry inference simply did not apply in this case. Under these circumstances, it is difficult to conclude that the erroneously-given

---

[2] It should be noted that the State presented convincing evidence that Reed entered Jackson's home intending to commit a crime, without regard to the stealthy-entry inference and instruction.

instruction had any effect on the jury.

"A jury is 'likely to disregard an option simply unsupported by the evidence.'" <u>Occhicone v. Singletary</u>, 618 So. 2d 730, 731 (Fla. 1993) (quoting <u>Sochor v. Fla.</u>, 504 U.S. 527, 538 (1992)) (finding that an erroneous aggravating-factor instruction in a capital murder prosecution was harmless where the evidence did not support the factor). We see no reason to conclude that the jury in this case did not disregard the stealthy-entry inference based on the manifest lack of evidence to support it, the lack of argument in favor of it, the persuasive argument against it, and the evidence of his intent to commit a crime without it. Accordingly, the misinstruction was harmless error and does not require reversal.

AFFIRMED.

LEWIS and BILBREY, JJ., CONCUR.