NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3053
_____

UNITED STATES OF AMERICA

v.

WHEELER ZAMICHIELI,
Appellant
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-12-cr-00182-01)
District Judge:  Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 7, 2022

Before:   JORDAN, SCIRICA, and RENDELL, *Circuit Judges*

(Filed: December 7, 2022)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Wheeler Zamichieli appeals the enhancement of his sentence under the Armed

Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA") and the categorization of his 1994

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

aggravated assault conviction as a "violent felony" under the ACCA. He also claims he

is entitled to resentencing because the District Court denied his request to file a tardy

sentencing memorandum. Lastly, he contends that his Fifth and Sixth Amendment rights

were violated when the District Court improperly handled a jury question, that the

Court's error was plain, and that he is entitled to a new trial.[1] We will affirm in part,

vacate in part, and remand for resentencing.

## I.      BACKGROUND

Because we write solely for the parties, we need not recite the facts in this case in

detail or fully recount its convoluted procedural history. It is sufficient to note the

following. Zamichieli was originally indicted on the charge of being a felon in

possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), and 924(e). He exercised

his right to a jury trial, was found guilty, and eventually sentenced to 210 months'

imprisonment, after the District Court applied an ACCA sentencing enhancement for

having three prior violent felony or serious drug offense convictions. He appealed and

---

[1] Zamichieli also objects to the treatment of his two prior convictions for drug trafficking in violation of 35 Pa. Stat. § 730-113(a)(30) as predicate "serious drug offenses" under ACCA. He asserts that since the Pennsylvania statute includes attempts, which are not included in the federal statute, the Commonwealth's statute sweeps more broadly than the Federal Controlled Substances Act and his prior drug convictions thus cannot be predicate offenses within the meaning of the ACCA. We rejected that argument most recently in *United States v. Daniels*, 915 F.3d 148 (3d Cir. 2019), and do so again here. Zamichieli recognizes that *Daniels* is binding authority, but he nevertheless maintains that *Daniels* has been undermined by our decision in *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (en banc). He "raises this issue for purposes of preservation should [that] decision[] be reconsidered because[, he says,] the term 'involving' as used in the ACCA is vague for Constitutional purposes." (Opening Br. at 61.)

we, for reasons unrelated to this appeal, vacated the judgment of the District Court and remanded for further proceedings. On remand, Zamichieli elected to go to trial for a second time and was again convicted and sentenced to 210 months' imprisonment, the District Court again applying the ACCA sentencing enhancement. His appeal from that second judgment is before us now.

Zamichieli's three purported ACCA predicate convictions are a possession-with-intent-to-distribute ("PWID") cocaine conviction from 1988; a second-degree aggravated assault conviction from 1994; and another PWID cocaine conviction from 1997. Notably, the charges underlying the 1994 and 1997 convictions were brought against Zamichieli in the same year, 1994, since the events on which the charges were based occurred on the same day or successive days. Zamichieli pled guilty to the assault charge in 1994 but elected to go to trial on the PWID charge and was not convicted until 1997, which accounts for the three-year gap between the convictions.

The parties agree that the facts surrounding the 1994 crimes are not clear from the record. (Opening Br. at 20-23; Answering Br. at 40-41 n.12.) Specifically, the record does not offer precision on the locations and dates of the two offenses. Zamichieli says that he had cocaine in his possession when he was approached by police on March 23, 1994, and, instead of submitting to authority, he pushed an officer to the ground and fled, shortly after which he was arrested for PWID a few blocks away. The government asserts that Zamichieli committed the aggravated assault on a police officer on March 23, 1994, and "took off" until officers later arrested him "in relation to another incident." (Answering Br. at 41) (quoting App. at 1161-62) (state plea colloquy). The government

3

maintains that these were different criminal episodes separated by timing, intervening events, and different locations, even if they occurred on the same day.

## II.     DISCUSSION[2]

### A.     Application of the Armed Career Criminal Act[3]

The ACCA provides for a sentence enhancement when, as relevant here, a defendant who is a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) "has three previous convictions … for a violent felony or a serious drug offense … committed on *occasions* different from one another[.]"  18 U.S.C. § 924(e)(1) (emphasis added).

#### 1.     Enhancement based on the "occasions" clause

Zamichieli specifically appeals the District Court's determination that his 1994 aggravated assault conviction and 1997 PWID conviction did not arise from the same "occasion."  The Supreme Court recently set forth the proper analysis for determining when, for the purposes of applying an ACCA sentencing enhancement, prior crimes should be treated as having occurred on "different occasions."  *Wooden v. United States*, 142 S. Ct. 1063 (2022).  Zamichieli asserts that the assault and drug possession are all

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[3] We review the District Court's factual findings for clear error and have plenary review of a district court's sentencing determination to the extent that it involves the application of legal principles. *See Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 297 (3d Cir.2001); *see also, United States v. Lee*, 208 F.3d 1306, 1307 (11th Cir.2000), cert. denied*, 532 U.S. 907, 121 S. Ct. 1232 (2001) (whether defendant's prior offenses count as separate under the ACCA is a legal issue subject to de novo review).

part of a single criminal episode. While the record here is murky on exactly when the two offenses occurred, the government concedes for purposes of this appeal that they occurred on the same day. It maintains, however, that, when analyzing the applicability of the ACCA enhancement, Zamichieli's flight from police officers – after assaulting one of them – was, among other things, sufficient as an intervening event to separate the assault from his later arrest for possessing drugs.

We decline to rule on this same-or-separate occasions question in the first instance. *See O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 763 n.3 (3d Cir. 2021) ("[A]s a 'court of review, not of first view,'" we "will analyze a legal issue without the district court's having done so first only in extraordinary circumstances.") It seems best instead for the District Court to have an initial opportunity to apply the new analysis from *Wooden* to this case. Therefore, we will vacate Zamichieli's 210-month sentence and remand for further consideration in light of *Wooden*. We express no opinion on what result should flow from the application of *Wooden* to the facts here, and the District Court can determine whether further development of the record is in order.[4]

## 2. Determining a "violent felony" under the ACCA

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year … that … has as an element the use, attempted use, or

---

[4] Zamichieli's argument concerning the Court's rejection of his request to file a tardy sentencing memorandum is moot since we will remand for resentencing. The District Court should provide the parties an opportunity to file supplemental sentencing memoranda.

threatened use of physical force against the person of another[.]"[5] 18 U.S.C. § 924(e)(2)(B)(i). Zamichieli argues that his 1994 aggravated assault conviction should not be considered a "violent felony" under the ACCA because the Pennsylvania statute under which he was convicted elevates a simple assault on a law enforcement officer to second-degree felony aggravated assault. In other words, since simple assault encompasses negligent or reckless behavior, crimes committed under that statute cannot be ACCA predicates.[6] *See Borden v. United* States, 141 S. Ct. 1817, 1834 (2021) (holding that a criminal offense requiring only a mens rea of recklessness cannot count as a "violent felony" under the elements clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i)). Zamichieli further contends that, under the categorical approach, the Pennsylvania statute sweeps more broadly than the federal statute because it contemplates an "attempt to cause" bodily injury to an officer, 18 Pa. Cons. Stat. § 2702(a)(3) (1994), which – since the Commonwealth is not required to prove actual bodily injury to an officer – does not meet the elements clause under the ACCA, 18 U.S.C. § 924(e)(2)(B)(i).[7] We disagree.

Zamichieli was not convicted of simple assault under Pennsylvania law. He was convicted of aggravated assault, a felony in the second degree. Consequently, we need

---

[5] This last part is known as the elements clause of the ACCA. *See Welch v. United States*, 578 U.S. 120, 123 (2016) ("Subsection (i) of this definition is known as the elements clause.").

[6] The Pennsylvania trial judge stated at Zamichieli's plea hearing: "Ordinarily, [your behavior] would be what is known as a simple assault. But the legislature says that by virtue of the fact that he was a police officer, simple assault which is perpetrated on a police officer becomes a felony of the second degree." (App. 1171.)

[7] While the Supreme Court recently held in *United States v. Taylor*, 142 S. Ct.

6

not ask the counterfactual question of how a conviction under Pennsylvania's simple assault statute would affect his case. The pertinent question is whether Zamichieli's Pennsylvania aggravated assault conviction is a "violent felony" for purposes of the ACCA.

Pennsylvania's aggravated assault statute in force at the time of Zamichieli's conviction provided in relevant part: "(a) A person is guilty of aggravated assault if he … (3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer … in the performance of duty[.]" And it classified "[a]ggravated assault under subsection (a)(3) … [a]s a felony of the second degree." 18 Pa. Cons. Stat. § 2702(a)(3) and (b) (1994).[8]

As noted above, an ACCA enhancement is triggered when a defendant has three prior convictions for "violent felon[ies]" or "serious drug offense[s]." 18 U.S.C. § 924(e)(1). The statute defines "violent felony," in relevant part, as "any crime punishable by imprisonment for a term exceeding one year … that … has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" 18 U.S.C. § 924(e)(2)(B)(i). The statute does not, however, define "physical

---

2015 (2022), that *attempted* Hobbs Act robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3), *Taylor* has no bearing here because, as set forth herein, Zamichieli's conviction involved completed, not attempted, aggravated assault.

[8] Zamichieli previously made, but withdrew, the argument that the District Court failed to establish which subsection of the Pennsylvania aggravated assault statute he was convicted of violating. Specifically, Zamichieli "concedes that he was convicted of 18 Pa. Cons. Stat. § 2702(a)(3) based on his pushing a police officer, and any argument or assertion that suggests otherwise is respectfully withdrawn." (Reply Br. at 20.)

force." The Supreme Court provided that definition in *Johnson v. United States*, 559 U.S. 133 (2010), when it held that "the phrase 'physical force' means *violent* force – that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis in original).

Pennsylvania law, in turn, defines "bodily injury" as "[i]mpairment of physical condition or substantial pain," 18 Pa. Cons. Stat. § 2301 (1994), which approximates the *Johnson* definition of "physical force." 559 U.S. at 140. Common sense dictates that knowingly or intentionally causing impairment of another's physical condition requires the use of physical – or "violent" – force. *Id*.

Zamichieli states that we "must … use the categorical approach" in applying the ACCA definitions, which limits courts to considering statutory elements and not the particular facts underlying a defendant's conviction. (Opening Br. at 56.) We have already held, however, that Pennsylvania's aggravated assault statute is divisible, *see* 18 Pa. Cons. Stat. § 2702(a); *United States v. Ramos*, 892 F.3d 599, 607-610 (3d Cir. 2018), and so we apply the modified categorical approach here.

Under the modified categorical approach, we are permitted "to determine which statutory phrase was the basis for the conviction by consulting the trial record – including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson*, 559 U.S. at 144. During Zamichieli's plea hearing, the Pennsylvania trial judge stated: "You shoved the officer and the officer fell." (App. at 1171.) And both parties agree that Zamichieli was convicted under 18 Pa. Cons. Stat. § 2702(a)(3) (1994), which defines an

8

assault on a law enforcement officer as an aggravated assault, a felony in the second degree. *See* supra note 8.

Accordingly, because that aggravated assault statute requires the knowing and intentional infliction of "bodily injury," which, as just noted, is consistent with the definition of "physical force" under the elements clause of the ACCA, his second-degree felony aggravated assault conviction was a "violent felony" for purposes of the ACCA. Indeed, *Johnson* held that so long as the force involved in a crime is "capable of causing physical pain or injury to another person[,]" the physical force requirement of a "violent felony" under the ACCA is satisfied. 559 U.S. at 138-143. Here, Zamichieli's force in shoving the officer to the ground was capable of causing physical pain or injury to the officer and thus, coupled with Pennsylvania law rendering such an assault a felony in the second degree, brings his prior conviction within the ambit of a "violent felony" under the ACCA.

The District Court therefore did not err when, at Zamichieli's sentencing, it held that his 1994 conviction constituted a predicate offense for the purposes of applying an ACCA enhancement.

## B.     The District Court's response to a jury question[9]

Lastly, the District Court did not commit plain error when it responded in writing to a jury question, allegedly outside of Zamichieli's presence.

The right to be present at every stage of one's criminal trial is "grounded in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment." *United States v. Toliver*, 330 F.3d 607, 611 (3d Cir. 2003); *see also* FED. R. CRIM. P. 43(a) ("Unless this rule … provides otherwise, the defendant must be present at … every trial stage[.]"). Zamichieli claims that, because the record is ambiguous about whether he was present during the discussion about the jury question, he is entitled to a new trial. Not so. While the transcript does not definitively demonstrate that Zamichieli was present during the discussion, his self-serving and bare assertion that he was not present, without more, does not satisfy his burden of proof, which "is difficult" to meet.[10] *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021). Furthermore, it is clear from the

---

[9] The parties do not dispute that this issue was unpreserved, and thus we review for plain error. "Plain error requires: (1) an error; (2) that is plain; and (3) that affected substantial rights." *United States v. Kemp*, 500 F.3d 257, 279 (3d Cir. 2007). If all three conditions are met, we may then "exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (cleaned up). "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it[.]" *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). "That means that the defendant has the burden of establishing each of the four requirements for plain-error relief … [which] is difficult." *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (internal quotation marks omitted).

[10] The transcript begins after appearances were presumedly entered, and since Zamichieli did not speak during that court session, we do not know whether Zamichieli was present.

record that the District Court carefully discussed the jury question in open court with both government and defense counsel. Neither party objected to the Court's written response at the time it was submitted to the jury, and the record shows that Zamichieli's defense counsel zealously advocated in his interest and persuaded the Court to add a limiting instruction to the written response to the jury. The District Court's actions – at least on plain error review – sufficiently comport with the Supreme Court's guidance for addressing questions and messages from a jury. *See Rogers v. United States*, 422 U.S. 35, 39 (1975) (holding that a "jury's message [be] answered in open court and that [defendant's] counsel should have … an opportunity to be heard before the trial judge respond[s].")

Zamichieli relies on *United States v. Toliver* for his position that the District Court erred in its handling of the jury question, but that reliance is unavailing since *Toliver* addressed a circumstance in which a district court responded to a jury question without consulting any of the parties or their counsel. 330 F.3d at 609. Here, the District Court notified the parties and engaged in a fulsome discussion with counsel from both sides on how to respond to the jury's question. Given defense counsel's vigorous advocacy, "the fairness, integrity [and] public reputation of [the] judicial proceedings" were not seriously affected, even if Zamichieli had not been present. *Greer*, 141 S. Ct. at 2097 (internal quotation marks omitted). Thus, there was no plain error.

Zamichieli also contends that the District Court erred by submitting a written rather than an oral response to the jury question. It is true that, in general, "instructions to the jury [are] given by the trial judge orally in the presence of counsel and the

11

defendant." *United States v. Noble*, 155 F.2d 315, 318 (3d Cir. 1946). That allows counsel and the defendant to raise objections, if desired, and to secure prompt correction. *Id.* It is also to "make as certain as may be that each member of the jury has actually received the instructions." *Id.*

We have not squarely decided whether an answer to a jury question must be delivered orally rather than in writing, although courts across the nation allow a written response, and several of our sister circuits have endorsed a trial court's discretion to respond to jury questions in writing.[11] At the very least, the District Court's choice to respond to the jury question in writing was not plainly erroneous.

## III. CONCLUSION

Consistent with the foregoing, we will affirm in part, vacate in part, and remand for resentencing. Specifically, Zamichieli's 210-month sentence, as enhanced under the ACCA, will be vacated and the case remanded for resentencing after consideration of the parties' arguments concerning *Wooden v. United States*, 142 S. Ct. 1063 (2022).

---

[11] *See, e.g., Beardslee v. Woodford*, 358 F.3d 560, 590-91 (9th Cir. 2004), *supplemented sub nom. Beardslee v. Brown*, 393 F.3d 1032 (9th Cir. 2004) (affirming state court conviction in a federal habeas action while stating "[w]ritten instructions in response to juror notes may be treated as jury instructions for purposes of review"); *United States v. Maraj*, 947 F.2d 520, 525 (1st Cir. 1991) (providing district courts with procedures of how to address jury questions, in both oral *and* written format); *United States v. Dellinger*, 472 F.2d 340, 379 (7th Cir. 1972) ("[W]hen the jury's notes were presented . . . [the court] might have sent a message to the jury, preferably in writing, and made a record in open court at the earliest reasonable opportunity, perhaps when there was still time for counsel to argue in favor of a supplemental response") (footnote omitted).